UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOANN RODRIGUEZ,

        Plaintiff,

       -against-

WESTBURY PUBLIC SCHOOLS, WESTBURY
PUBLIC SCHOOLS BOARD OF EDUCATION,
MARY LAGNADO, ROBERT BRISBANE,
DALE TELMER and GLORIA DINGWALL,

        Defendants.
-----------------------------------------------------------X

<u>MEMORANDUM AND ORDER</u>

CV 13-4976

(Wexler, J.)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JUL 15 2015   ★ 

**LONG ISLAND OFFICE**

APPEARANCES:

The Law Office of Steven A. Morelli, P.C.
1461 Franklin Avenue
Garden City, NY 11530
Attorneys for Plaintiff

Sokoloff Stern LLP
By: Adam I. Kleinberg, Esq.
    Kevin Levine, Esq.
179 Westbury Avenue
Carle Place, NY 11514
Attorneys for Defendants

WEXLER, District Judge:

    Plaintiff Joann Rodriguez ("Rodriquez" or "Plaintiff") brings this action alleging race and

religion discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000(e), *et*

*seq.*, ("Title VII"), the Equal Protection Clause of the U.S. Constitution, pursuant to 42 U.S.C. §

1983, 42 U.S.C. § 1981 and the New York State Human Rights Law ("NYSHRL"). Defendants

Westbury Public Schools, Westbury Public Schools Board of Education (collectively,

"Westbury" or the "District"), Mary Lagnado ("Lagnado"), Robert Brisbane ("Brisbane"), Dale

Tellmer ("Tellmer"), Gloria Dingwall ("Dingwall") and Constance Clark ("Clark") (collectively,

"Defendants") move for summary judgment under the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 56, claiming many of Plaintiff's claims are untimely, and all fail to substantiate claims of discrimination based on her race and religion. For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

I.    Factual Background

Plaintiff complains that as a white Catholic woman, she was discriminated against on the basis of her religion and race, citing various incidents over the course of her employment with the District. Some of her principal complaints include that she faced building and teaching assignment transfers, she was subjected to Yiddish expressions during staff meetings conducted by a Jewish principal, she was silenced when an African-American principal put a hand four feet from her face at a staff meeting, she endured a delayed tenure decision, and suffered an overall hostile work environment.

The following facts are taken from the parties' Local Rule 56.1 Statements, unless otherwise noted. Plaintiff was first hired as a probationary kindergarten teacher by the District in August 2006 and was assigned to teach at Dryden Street School ("Dryden"), an elementary school. Defendants' Rule 56.1 Statement ("Def. 56.1 Stmt."), ¶¶ 1, 13, 32; Plaintiff's Counter Statement of Facts Pursuant to Rule 56.1 ("Pl. Counter 56.1 Stmt."), ¶¶ 1¶ 1, 13, 32. Plaintiff's principal at Dryden was Defendant Telmer, a Caucasian, Jewish woman. Def. 56.1 Stmt., ¶ 3; Pl. Counter 56.1 Stmt., ¶ 3.

Defendant Telmer conducted the staff meetings at Dryden, typically twice a month. Def. 56.1 Stmt., ¶ 35; Pl. Counter 56.1 Stmt., ¶ 35. During these meetings, Defendant Telmar would

use Yiddish terms. Def. 56.1 Stmt., ¶ 36; Pl. Counter 56.1 Stmt., ¶ 36. Plaintiff claims she used these terms at least once per meeting, knowing that some in attendance would not understand her, and that Plaintiff would feel excluded by the use of Yiddish terms. Pl. Counter 56.1 Stmt., ¶¶ 36.1-36.4.

In the 2007/2008 school year, the son of an African-American Board member, Karin Campbell, was placed in Plaintiff's classroom. Def. 56.1 Stmt., ¶ 43; Pl. Counter 56.1 Stmt., ¶ 43. Plaintiff complains that Ms. Campbell was unhappy with how the school was being run, and threatened Plaintiff's tenure by soliciting information about how Dryden operated. Def. 56.1 Stmt., ¶ 48; Pl. Counter 56.1 Stmt., ¶ 48. The next school year, 2008/2009, at the end of which Plaintiff would be considered for tenure, Plaintiff was not given satisfactory help in the classroom. She was assigned three different teaching assistants, two of whom were fired, and was assigned aides on occasion when no teaching assistant was available. Def. 56.1 Stmt., ¶ 52-60; Pl. Counter 56.1 Stmt., ¶ 52-60.

Plaintiff also complains she was discriminated in the manner in which her tenure status was handled. At the end of the 2008/2009 school year, Defendant Telmer recommended Plaintiff for tenure, which was then tabled by the Board when initially presented. Def. 56.1 Stmt., ¶ 62-63; Pl. Counter 56.1 Stmt., ¶ 62-63. Plaintiff believes Ms. Campbell, the Board member who had been a difficult parent in her classroom the prior year, opposed her tenure application, using Plaintiff's attendance record as an excuse. Def. 56.1 Stmt., ¶ 64; Pl. Counter 56.1 Stmt., ¶ 64. Ultimately, following a delay which Plaintiff claims was not endured by other tenure candidates, Plaintiff was granted tenure at the Board's July 15, 2009 meeting. Def. 56.1 Stmt., ¶ 14, 70; Pl. Counter 56.1 Stmt., ¶ 14, 70.

In the 2010/2011 school year, Plaintiff was assigned to teach the Intensive Consultant Teacher ("ICT") program on the kindergarten level. This program integrates special education students into the general education classroom, and is supported by a full-time teacher's aide or teaching assistant and a ½ day special education teacher. Def. 56.1 Stmt., ¶ 75-77; Pl. Counter 56.1 Stmt., ¶ 75-77.

For the 2011/2012 school year, four kindergarten classes were moved from Dryden to Park Avenue School ("Park"), another elementary school in the District, to make room for full-day pre-K classes that were returning to be housed in Dryden. Def. 56.1 Stmt., ¶ 4, 84, 88; Pl. Counter 56.1 Stmt., ¶ 84, 88, 4. As part of the reorganization, Plaintiff and four other teachers were transferred from Dryden to Park. Def. 56.1 Stmt., ¶ 93; Pl. Counter 56.1 Stmt., ¶ 93. Following the transfer, Plaintiff continued to teach a kindergarten ICT class at Park, as she had the prior year at Dryden. Def. 56.1 Stmt., ¶ 105; Pl. Counter 56.1 Stmt., ¶ 105. Defendant Gloria Dingwall, an African-American woman, was the Principal at Park. Def. 56.1 Stmt., ¶ 4; Pl. Counter 56.1 Stmt., ¶ 4.

While at Park, there came a time when Plaintiff took a computer home but told Dingwall that she had thrown it out. Def. 56.1 Stmt., ¶¶ 110-112; Pl. Counter 56.1 Stmt., ¶¶ 110-112. Thereafter the Assistant Superintendent for Curriculum, Instruction and Personnel, Defendant Dr. Robert Brisbane, an African-American male, wrote Plaintiff a letter regarding the false statements she made concerning the computer that went into Plaintiff's file. Def. 56.1 Stmt., ¶¶ 5, 113; Pl. Counter 56.1 Stmt., ¶¶ 5, 113, 113.1. Defendant Dingwall ran staff meetings at Park, and had a practice of raising her hand during those meetings to get people to stop talking. Def. 56.1 Stmt., ¶¶ 116, 120; Pl. Counter 56.1 Stmt., ¶¶ 116, 120. Defendant Dingwall put her hand

four feet from Plaintiff's face on one occasion to get her to stop talking. Def. 56.1 Stmt., ¶ 121; Pl. Counter 56.1 Stmt., ¶ 121. In the Spring of 2012, Plaintiff told the parents of some of her students that she would be teaching second grade at Park the following year. Def. 56.1 Stmt., ¶ 126; Pl. Counter 56.1 Stmt., ¶ 126. Plaintiff only taught at Park for one year. Def. 56.1 Stmt., ¶ 115; Pl. Counter 56.1 Stmt., ¶ 115.

For the 2012/2013 school year, the District decided to move all of the kindergarten classes at Park back to Dryden. Def. 56.1 Stmt., ¶ 129; Pl. Counter 56.1 Stmt., ¶ 129. Four teachers other than Plaintiff were assigned to teach the kindergarten ICT classes at Dryden. Def. 56.1 Stmt., ¶ 137; Pl. Counter 56.1 Stmt., ¶ 137. Mr. Andrew Schuster, a white, Jewish male, who had been a pre-K teacher in the District for approximately thirteen years, was assigned to teach a kindergarten ICT class for the 2012/2013 year. Def. 56.1 Stmt., ¶¶ 141, 143; Pl. Counter 56.1 Stmt., ¶¶ 141, 143.

Second grade classes were to return to Park for the 2012/2013 school year. Def. 56.1 Stmt., ¶ 147; Pl. Counter 56.1 Stmt., ¶ 147. In June 2012, Plaintiff emailed Dr. Wanda Toledo ("Toledo"), the principal at Drexel Avenue School ("Drexel"), another elementary school in the District, requesting to teach second grade or third grade for the upcoming school year. Def. 56.1 Stmt., ¶¶ 160-161; Pl. Counter 56.1 Stmt., ¶¶ 160-161. Plaintiff received an email response from Toledo that she believed Plaintiff would be staying at Park, where the second grade would be. Def. 56.1 Stmt., ¶¶ 162-163; Pl. Counter 56.1 Stmt., ¶¶ 162-163. Plaintiff asserts that rather than Plaintiff, Mr. Jason Bryant, an African-American male whose mother was a former teacher in the District with ties to the Board, was assigned to teach second grade at Park, even though Mr. Bryant received poor performance evaluations. Verified Complaint ("VC"), ¶ 63; Pl. Counter

56.1 Stmt., ¶¶ 215-216. Mr. Bryant taught fifth grade at Drexel the previous year, where he was not one of stronger teachers. Pl. Counter 56.1 Stmt., ¶ 209, citing Deposition of Gloria Dingwall, at 80.

After learning that she would not be staying at Park, Plaintiff requested to go to Drexel rather than return to Dryden. Def. 56.1 Stmt., ¶¶ 167-169; Pl. Counter 56.1 Stmt., ¶¶ 167-169. Plaintiff was transferred to teach at Drexel for the 2012/2013 school year, (Def. 56.1 Stmt., ¶¶ 159-160; Pl. Counter 56.1 Stmt., ¶¶ 159-160), where she was assigned to teach fifth grade. See VC, ¶ 61.

This was Plaintiff's first time teaching fifth grade. Def. 56.1 Stmt., ¶ 179; Pl. Counter 56.1 Stmt., ¶ 179. Plaintiff repeatedly asked Principal Dr. Wanda Toledo (an African-American woman) for support since she was not experienced teaching at that grade level. Plaintiff claims that all non-Caucasian and non-Catholic teachers were offered support and participation at a professional conference to help them transition to their new placements. VC, ¶ 64. In the fall of 2012, Principal Toledo assigned Plaintiff an uncompensated mentor, (Def. 56.1 Stmt., ¶ 181; Pl. Counter 56.1 Stmt., ¶ 181), and in February 2013, Toledo offered to compensate Plaintiff's mentor, which Plaintiff declined since by then her classroom observations were completed. Def. 56.1 Stmt., ¶¶ 189-191; Pl. Counter 56.1 Stmt., ¶¶ 189-191.

Plaintiff filed a claim with the EEOC on December 26, 2012 and received a "right to sue" letter dated June 10, 2013. See VC, Ex. A. This action was filed on September 6, 2013, alleging violations of Title VII, the Equal Protection Clause of the U.S. Constitution pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1981 and the NYSHRL.

Defendants move for summary judgment, arguing that not only are many of Plaintiff's

claims time-barred, they are merely "petty grievances" and "subjective disappointments" that fail to substantiate discrimination claims as alleged. See Defendants' Memorandum of Law ("Def. Mem."), at 1.

## DISCUSSION

I.    Standards on Motion for Summary Judgment

The standards for summary judgment are well settled. Rule 56(a) states that summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Mihalik v. Credit Agricole Cheuvreux North America, Inc., 2013 WL 1776643 (2d Cir. 2013). The moving party bears the burden of showing entitlement to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). As the Supreme Court has stated, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

247-48 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. <u>R.G. Group, Inc. v. Horn & Hardart Co.</u>, 751 F.2d 69, 77 (2d Cir. 1984) (quoting <u>SEC v. Research Automation Corp.</u>, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" <u>BellSouth Telecomms., Inc. v. W.R. Grace & Co.</u>, 77 F.3d 603, 615 (2d Cir. 1996), quoting <u>Research Automation Corp.</u>, 585 F.2d at 33.

II.     <u>Plaintiff's Title VII Claims</u>

    A. <u>Legal Principles</u>

    1. <u>Statute of Limitations</u>

Title VII requires that a plaintiff claiming discrimination in New York must file a charge with the EEOC within 300 days of an unlawful employment practice. <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109, 122 S.Ct. 2061, 2071 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)); <u>Patterson v. County of Oneida, N.Y.</u>, 375 F.3d 206, 220 (2d Cir. 2004); <u>Johnson v. County of Nassau</u>, 2014 WL 4700025, at *10 (E.D.N.Y. Sept. 22, 2014); <u>Fanelli v. New York</u>, 51 F.Supp.2d 219, 227-228 (E.D.N.Y. 2014). Each discrete discriminatory act is time barred if it is not filed within the requisite period of time, even if it is related to a timely filed charge. <u>Morgan</u>, 536 U.S. at 113, 122 S.Ct. at 2072 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."); <u>Patterson</u>, 375 F.3d at 220 (Title VII precludes recovery for *discrete* acts of discrimination that occurred outside the time period)(citations omitted; emphasis in original). Yet, even in the instance where a plaintiff

cannot bring a claim for an act that is time-barred, he may use the prior, untimely acts, as "background evidence" to support his claim. <u>Morgan</u>, at 113 (the statute does not bar "an employee from using the prior acts as background evidence in support of a timely claim"); <u>see also</u> <u>Johnson</u>, 2014 WL 4700025, at *10; <u>Fanelli</u>, 51 F.Supp.2d at 227-228.

This is distinguished from a claim that alleges a hostile work environment in violation of Title VII. The nature of a hostile work environment claim is that the defendant has engaged in an unlawful employment practice that persists over time through a series of repeated acts, and does not occur on a particular day, through a discrete, individual act. <u>Morgan</u>, at 115. The Supreme Court in <u>Morgan</u> held that due to the ongoing nature of a hostile work environment claim, as long as one act occurs within 300 days of the filing of the EEOC complaint, the claim is timely. <u>Id</u>. at 117. The claim and related liability may include all acts that constitute the hostile work environment, even those that occurred outside the 300-day period. <u>Id</u>. at 118 (since all of the acts of the hostile work environment constitute one "unlawful employment practice," the employer may be liable for all the acts that are part of this single claim, and only one act that is part of the hostile work environment need be filed timely); <u>see also</u> <u>Patterson</u>, 375 F.3d at 220 (a claim for hostile work environment is timely as long as one act contributing to the claim occurred within the statutory period, and the entire period of the hostile environment may be considered to determine liability) (citations omitted); <u>Fanelli v. New York</u>, 51 F.Supp.2d 219, 227-228 (E.D.N.Y. 2014) (only one act in furtherance of a policy of discrimination need occur in the limitations period); <u>Johnson v. County of Nassau</u>, 2014 WL 4700025, at *10 (E.D.N.Y. Sept. 22, 2014).

## 2. Elements of a Title VII Claim

### a. Discrimination Claim

Title VII prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To make a *prima facie* case of discrimination, a plaintiff must show (1) she was within a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. Fanelli v. New York, 51 F.Supp.3d 219, 230 (E.D.N.Y. 2014) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009)); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

### i. Adverse Employment Action

A preliminary issue here is whether Plaintiff has suffered an "adverse employment action" as required. A plaintiff sustains an adverse employment action if he or she endures a "'materially adverse change' in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Galabya, 202 F.3d at 640 (quoting Crady v. Liberty Nat. Bank and Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993)). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Id.; see Gray v. City of New York, 2011 WL

6153635 (E.D.N.Y. Dec. 12, 2011).

ii. Inference of Discrimination

The fourth prong of a discrimination claim requires a plaintiff to show also that the adverse employment action occurred with "an inference of discrimination." An inference of discrimination may be drawn by a showing by the plaintiff that she suffered disparate treatment in comparison to others similarly situated. Brown v. Daikin America Inc., 756 F.3d 219, 229 (2d Cir. 2014); Fanelli, 51 F.Supp.3d at 231 (citing Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)). Whether two employees are similarly situated is ordinarily a question of fact for the jury. Graham, 230 F.3d at 39, 43.

Plaintiff's discrimination claim is subject to the burden shifting outlined in McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) 411 U.S. at 802, 93 S.Ct. 1817 Once the plaintiff satisfies an initial "minimal" burden, the burden of production shifts to the employer to articulate, through admissible evidence, some "legitimate, nondiscriminatory reason" for the employment action. See Patterson, 375 F.3d at 221 (citations omitted). If the employer meets this burden, it shifts back to the plaintiff to show through competent evidence that the stated reasons of the employer were merely a pretext for discrimination. Id. (citations omitted). Throughout, the burden remains with the plaintiff to show that the defendant intentionally discriminated. Id.; McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. If elements of a plaintiff's claim are disputed, the question must be submitted to a jury. Bucalo v. Shelter Island Union Free School Dist., 691 F.3d 119, 129-130 (2d Cir. 2012) (citing Hester v. BIC Corp., 225 F.3d 178, 186 (2d Cir. 2000) (other citations omitted)); see also Cabrera v. Jakabovitz, 24 F.3d 372, 381 (2d Cir. 1994)).

### b. Hostile Work Environment Claim

In addition to her discrete discrimination claims, Plaintiff here claims that she was subjected to a hostile work environment on account of her race and religion. To state a claim of a hostile work environment, a plaintiff must show that the workplace was so permeated with "'discriminatory intimidation, ridicule, and insult,'" so "sufficiently severe or pervasive" that it "alter[s] the conditions of the victim's employment.'" Patterson, 375 F.3d at 227 (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)). Whether conduct is sufficiently "severe or pervasive" to create a hostile work environment is based on the totality of the circumstances, including frequency, severity, whether physically threatening, and "'whether it reasonably interferes with the an employee's work performance.'" Patterson, 375 F.3d at 227 (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); see also Wiercinski v. Mangia 57, Inc., 2015 WL 2402654, at *5 (2d Cir. May 21, 2015) (citing Harris, 510 U.S. at 23). "Where reasonable jurors could disagree as to whether alleged incidents of racial insensitivity or harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law." Patterson, 375 F.3d at 227 (citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000) and Richardson v. New York State Department of Correctional Service, 180 F.3d 426, 439 (2d Cir. 1999)); Wiercinski v. Mangia 57, Inc., 2015 WL 2402654, at *6 (whether defendant subjected plaintiff to a hostile work environment was a conclusion for the jury, not to be rejected by the district judge); but see Tolbert v. Smith, 2015 WL 3875237, at *9 (2d Cir. June 24, 2015) (affirming summary judgment dismissing a hostile work environment claim where plaintiff failed to identify sufficient facts showing that the work

environment was sufficiently hostile or abusive or exhibited a discriminatory animus or motive).

B. Disposition of the Motion

1. Statute of Limitations

Defendants here argue that many of Plaintiff's Title VII claims are time-barred. As noted above, Title VII requires that a claim be filed with the EEOC within 300 days of the unlawful employment practice. Here, there is no dispute that Plaintiff filed her claim with the EEOC on December 26, 2012. Def. 56.1 Stmt., ¶ 2; Pl. Counter 56.1 Stmt., ¶ 2. Therefore, any acts prior to March 1, 2012 (300 days prior to that filing) are beyond the scope of the claim and time-barred. Plaintiff's argument that her claims constitute one "continuing violation" is unpersuasive. The notion of a "continuing violation" is usually associated with a discriminatory policy, and not isolated discrete acts like the Plaintiff claims here. See Stamm v. New York City Transit Authority, 2013 WL 244793, at 8 (E.D.N.Y. January 22, 2103) (noting the Second Circuit's disfavor with the "continuing violation doctrine," but applying it where "specific and related instances of discrimination ... were permitted to continue unremedied for so long as to amount to a discriminatory policy or practice.").[1] As noted above, even if acts are related, the acts that occurred outside the 300 day period are not actionable under Title VII. See Morgan, 530 U.S. at 113 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges...").

Thus, the Court finds that Plaintiff's Title VII claims of race and religion discrimination stemming from unlawful employment practices that occurred prior to March 1, 2012 are time-

_____

[1]Plaintiff's claim of a discriminatory hostile work environment is discussed separately below.

barred and dismissed. This includes the Board's delayed decision to grant tenure in 2009; any transfers prior to March 1, 2012, including Plaintiff's transfer to Park for the 2010/2011 school year; and any allegedly discriminatory acts that occurred while Plaintiff was working at Dryden from 2006 through the end of the 2009/2010 school year, including Defendant Telmar's use of Yiddish phrases during staff meetings at Dryden. Plaintiff's complaint alleges other acts of discrimination while at Dryden, including the placement of Campbell's child in her classroom; Defendant Telmer's failure to discipline another teacher who raised her voice at Plaintiff; Telmer calling Plaintiff "Jennifer" -- the name of another white Catholic teacher in the building; and Telmer forcing Plaintiff to use her maiden name, Gallagher, with her married name, to be called Gallagher-Rodriguez. Since the acts occurred while Plaintiff was at Dryden, which she left in June 2010, they are beyond the 300 day period prior to the filing of the EEOC complaint and are time-barred.

2. Plaintiff's Discrimination Claims

Plaintiff also claims she suffered certain unlawful employment practices **after** March 1, 2012 that were discriminatory in violation of Title VII. Specifically, Plaintiff alleges she was discriminated against, by, amongst other things, being transferred from Park for the 2012/2013 school year to teach 5th grade at Drexel; not being offered more support during the 2012/2013 school year; and being silenced at a staff meeting by Defendant Dingwall, an African-American woman who was her principal at Park by putting her hand four feet from Plaintiff's face.

As stated above, to state a claim of discrimination, a plaintiff must show (1) she was within a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an

inference of discrimination. A critical first issue here is whether the acts complained of were "adverse employment actions."

a. The 2012/2013 School Year

The Court first addresses whether Plaintiff's transfer from Park to Drexel to teach 5th grade for the 2012/2013 is an "adverse employment action." An adverse employment action is one which is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya, 202 F.3d at 640 (internal quotations omitted). Typically a teacher's transfer is not be deemed an "adverse employment action" in absence of lost salary, benefits, seniority or tenure. See Galabya, 202 F.3d at 640 (citing Rodriguez v. Board of Educ., 620 F.2d 362, 365 (2d Cir. 1980)). Plaintiff here does not allege that she lost salary, benefits, seniority or tenure as a result of this transfer. Yet, the Second Circuit has stated that a transfer could be adverse if it is a "materially significant disadvantage," such as an assignment that is "materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement." Galabya, 202 F.3d at 641.

In Rodriguez v. Board of Educ., 620 F.2d 362 (2d Cir. 1980), a case Plaintiff argues here, the Second Circuit found that the transfer of a plaintiff who had been a middle school art teacher for twenty years and was transferred to teach art in an elementary school suffered an "adverse employment action." In so concluding, the Court noted that the evidence indicated that "the art programs at the elementary level were so profoundly different from those in the junior high school as to render utterly useless her twenty years of experience and study in developing art programs for middle school children." Id. at 366. The Court found triable issues of fact existed that could not be resolved by summary judgment.

-15-

In the present case, Plaintiff has sufficiently created an issue of fact as to whether her transfer for the 2012/2013 school year was such a "materially significant disadvantage" to be an "adverse employment action." See Galabya, 202 F.3d at 641 (citing Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994)); see also Beyer v. County of Nassau, 524 F.3d 160, 165 (2d Cir. 2008) (a transfer may be an adverse employment action where the new assignment is "materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement") (quotations omitted).

Plaintiff taught kindergarten from the time she was first hired by the District in 2006. She taught ICT kindergarten for the two years prior to the transfer at issue. Plaintiff was then transferred to teaching a general education 5th grade class. There is no dispute she was certified to teach 5th grade, but she had never previously done so. While both levels are still within elementary school, common sense indicates that teaching an integrated special education kindergarten class is different and requires different skills than teaching a general education 5th grade. It is undisputed that Plaintiff was offered a non-paid mentor and then later a paid mentor to assist her with the transition, which implicitly acknowledges that the new assignment was sufficiently different from her prior experience of teaching kindergarten for 5 years.

Also significant is that the Plaintiff went from teaching a special education class to general education. In Galabya, the Second Circuit found that there was no adverse employment action where the plaintiff was transferred from teaching a junior high special education keyboarding class to a mainstream high school keyboarding class where plaintiff failed to produce any evidence that the new assignment was "materially less prestigious, materially less suited to his skill and expertise, or materially less conducive to career advancement." Id. at 641.

-16-

Yet, here, Plaintiff alleges the assignment was material enough that support was warranted, and indeed, provided in some form. She also alleges that she suffered personally, as well as professionally after the transfer to 5th grade. See Declaration of Steven Morelli, Exhibit A: Deposition of Joanne Rodriguez, at 165-167.[2] Further, Plaintiff claims she requested and was told she would teach the ICT kindergarten, and then requested and was told she would teach second grade, but instead was punished by Defendant Brisbane and sent to teach 5th grade. Plaintiff argues her requests were denied her and given to a Jewish and an African-American male instead. This factor could be relevant to determining whether the action was adverse. Cf. Galabya, 202 F.3d at 640 (appellant's failure to allege that he was denied an available transfer was considered by Court in affirming the transfer was not an adverse employment action).

Here, viewing all the evidence in a light most favorable to the Plaintiff, the Court finds that she raises an issue of fact as to whether her transfer for the 2012/2013 school year was "materially less suited" to her skills and expertise, or was "materially less conducive to career advancement" to constitute an adverse employment action. Thus, the Court denies Defendants' motion for summary judgment on this claim. Similarly, the Court finds that there is a sufficient question of fact as to Plaintiff's claim that she denied appropriate support to succeed that school year and whether that was an "adverse employment action." Therefore, Defendants' motion for summary judgment on the claims based on the 2012/2013 transfer and the support she received that year is denied.

---

[2]There is evidence that Plaintiff did not enjoy the same professional success she had previously enjoyed once she was transferred to teach 5th grade. While the Court is aware that there may be various unrelated explanations for that, the Court finds that there could be a fact question of whether this was due to the transfer being "materially less conducive to career advancement."

b. Acts of Defendant Dingwall

Plaintiff also claims she suffered discrimination because Defendant Dingwall, an African-American principal, silenced her one time at a meeting by putting her hand four feet from Plaintiff's face. The Court finds that this single event, while possibly insulting, does not constitute a "material adverse change in terms and conditions of employment" and is therefore not an adverse employment action as required for a discrimination claim.

Furthermore, the evidence indicates and Plaintiff admits that Dingwall practiced this technique as a way of getting people to stop talking at faculty meetings, which were held twice a month. Def. 56.1 Stmt., ¶¶ 116, 120; Pl. Counter 56.1 Stmt., ¶¶ 116, 120. While Plaintiff alleges that African-American staff members were permitted to speak, (see Pl. Mem. In Opp., at 21), she admits that she could not identify minority teachers that were permitted to speak. Def. 56.1 Stmt., ¶ 124; Pl. Counter 56.1 Stmt., ¶ 124. Plaintiff claims Dingwall did permit a social worker, the school psychologist and assistant principal -- all African-American -- to speak at meetings. See Pl. Counter 56.1 Stmt., ¶ 124.1-124.3, citing Plaintiff's 50-H deposition. The Court finds that the facts show that all teachers were silenced this way during meetings by Dingwall. Permitting administrators or other general staff members to speak while keeping teachers, including Plaintiff, silent does not substantiate a claim of discrimination against Plaintiff. Thus, Plaintiff fails to present sufficient facts to indicate that this one act directed at her, or the practice, involved any "inference of discrimination" as required to support a Title VII claim. Defendants' motion for summary judgment for a claim based on this incident is granted.

Plaintiff fails to allege sufficient facts to indicate that any other acts or events described in her complaint constitute adverse employment actions as required to support a discrimination

claim. Thus, to the extent Plaintiff asserts any such claims, the Court grants Defendants' motion for summary judgment.

### 3. Hostile Work Environment Claim

To establish a claim of a hostile work environment, a plaintiff must show that "his workplace was 'permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently sever or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Johnson, 2104 WL 4700025, at * 11 (quoting Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000) (internal quotations omitted; other citations omitted)); Tolbert v. Smith, 2015 WL 3875237, at *8 (2d Cir. June 24, 2015) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). The incidents in question must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." Id. at 374 (internal quotations omitted). As noted above, as long as one act that supports the hostile work environment claim occurs within the 300 day period prior to the EEOC complaint, all the acts that comprise the hostile work environment are timely and may be considered for the purpose of determining liability. Patterson, 375 F.3d at 220.

Plaintiff's allegations of a hostile work environment based on religious discrimination include various acts committed by Defendant Telmar while Plaintiff was teaching at Dryden, including, amongst other things, forbidding Plaintiff from using only her married name Rodriguez; using Yiddish terms at the staff meetings; placing Board member Karin Campbell's child in Plaintiff's class; assigning Plaintiff ineffective assistants; not disciplining another teacher for raising her voice at Plaintiff; bad-mouthing Plaintiff to Defendant Dingwall; and refusing to

permit Plaintiff to return to teach the Kindergarten ICT class for the 2012/2013 school year. See Plaintiff's Memorandum in Opp ("Pl. Mem. in Opp."), at 19-20.

Plaintiff's hostile work environment based on race stems from: 1) Dingwall's practice of silencing people, yet not African-Americans, from speaking at meetings; 2) Board member Campbell threatening Plaintiff's tenure, and allegedly making racially charged comments in Plaintiff's presence; 3) Defendant Brisbane being angry and hostile to Plaintiff at a meeting in June 2012; 4) assigning the second grade teaching spot to an African-American poor-performing teacher; 5) subjecting Plaintiff to two involuntary assignments in two years and assigning Plaintiff to teach 5th grade at Drexel for the 2012/2013 school year; and 6) Dr. Brisbane refusing to provide Plaintiff with a paid mentor in her first year at Drexel. See Pl. Mem. in Opp., at 21.

As an initial issue, the Court notes that since at least one act of the alleged hostile work environment based on religious discrimination -- the failure to permit Plaintiff to return to Dryden for the 2012/2013 school year -- occurred within the 300 day period prior to the EEOC filing, the claim is timely. Similarly, at least one aspect of Plaintiff's claim based on race -- the assignment of the African-American teacher to the second grade over Plaintiff in June 2012 for the 2012/2013 school year -- is timely. Patterson, 375 F.3d at 220 (a claim for hostile work environment is timely as long as one act contributing to the claim occurred within the statutory period, and the entire period of the hostile environment may be considered to determine liability) (citations omitted).

Yet, the Court finds that no reasonable jurors could agree that even taking all of these incidents together as sufficiently continuous or connected, they "adversely altered" Plaintiff's working conditions to create a hostile work environment based on religion or race. Also,

Plaintiff fails to show that how this alleged harassment was discriminatory in nature. Merely making conclusory allegations is insufficient. BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (quoting Research Automation Corp., 585 F.2d at 33). "It is axiomatic that the plaintiff must also show that the hostile conduct occurred because of a protected characteristic." Tolbert, 2015 WL 3875237, at *8 (citing Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)).

Even viewing the facts that Plaintiff alleges in a light most favorable to her, Plaintiff fails to meet these standards. First, the facts alleged are not sufficiently sever or pervasive enough to alter Plaintiff's working conditions to create an abusive environment. Furthermore, other than the fact that these actions were taken by people who are a different race or religion than Plaintiff, the facts do not indicate how the alleged harassment was discriminatory in any way, either based on race or religion. Therefore, Defendants' motion for summary judgment on Plaintiff's hostile work environment claim is granted. Tolbert v. Smith, 2015 WL 3875237, at *9 (2d Cir. June 24, 2015) (affirming summary judgment dismissing a hostile work environment claim where plaintiff failed to identify sufficient facts showing that the work environment was sufficiently hostile or abusive or exhibited a discriminatory animus or motive).[3]

## II. Plaintiff's Claims under § 1981 and § 1983

42 U.S.C. §1981 provides that all persons "shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." See Patterson, 375 F.3d at 224 (quoting 42 U.S.C. § 1981(a)). It "outlaws discrimination with respect to the enjoyment of benefits,

---

[3]It is well-settled that Title VII does not provide for liability against individuals. Tolbert, at 12, n.3 (citations omitted). Therefore, to the extent Plaintiff asserts Title VII claims against any of the individual Defendants, those claims are dismissed.

privileges, terms, and conditions of a contractual relationship, such as employment...." Robinson v. Concentra Health Services, Inc., 781 F.3d 42, (2d Cir. 2015) (quoting Patterson, 375 F.3d at 224 (other citations omitted)), and prohibits race discrimination. Plaintiff's § 1983 claim asserts a violation of the Equal Protection Clause.

### 1. Statute of Limitations

Claims under 42 U.S.C. § 1981 and § 1983 are governed by a three-year statute of limitations. See Patterson, 375 F.3d at 225 ("[t]the statue of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years.") (citations omitted); see also Johnson v. County of Nassau, 2014 WL 4700025, at *17 (E.D.N.Y. Sept. 22, 2014) (three year statute of limitations governs discrimination claims under §§ 1981 and 1983 in New York). Thus, any claims based on acts that occurred before or September 6, 2010, which is three years prior to the filing of this complaint on September 6, 2013, are untimely.[4]

### 2. Merits of Plaintiff's § 1981 and § 1983 Claims

The same standards that apply to claims of discriminatory conduct in violation of Title VII as outlined above also apply to claims brought under § 1981 or the Equal Protection Clause. Patterson, 375 F.3d at 225.[5] Therefore the Court's rulings on Plaintiff's Tile VII claims based on

---

[4]Plaintiff argues the claims under § 1981 are governed by a four year statute of limitations, which would make any claim as far back as September 6, 2009 timely. See Pl. Mem., at 3. Yet Plaintiff fails to indicate that any claims based on race discrimination emanate from conduct during that time period that are not already addressed here.

[5]Claims under § 1981 differ from claims under Title VII in that the statute of limitations for claims under § 1981 is three years; a claim under § 1981 or § 1983 against a municipality requires that the challenged acts were pursuant to an municipal policy; individuals may be liable under § 1981, but are not under Title VII; and a plaintiff must show that discrimination under § 1981 is intentional. See generally Patterson, 375 F.3d at 225-226; Johnson, 2014 WL 4700025, at *17 (E.D.N.Y. Sept. 22, 2014) (discussing four differences between claims under Title VII and

acts after March 1, 2012 govern those same claims under § 1981 and § 1983. Namely, Plaintiff has raised questions of fact that preclude summary judgment on whether her assignment for the 2012/2013 school year and the level of support she received that year constituted adverse employment actions; and that Defendant Dingwall's practice of silencing Plaintiff during a meeting does not constitute an adverse employment action, and therefore Defendants' motion for summary judgment on that claim is granted.

Other claims that are not timely under Title VII but are timely under §§ 1981 or 1983 include any acts that occurred since September 6, 2010. Any § 1981 and § 1983 claim based on acts prior to September 6, 2010 are time barred, including the Board's consideration of and decision on Plaintiff's tenure.

As described above, Plaintiff claims discrimination by Defendant Telmar by her use of Yiddish expressions during staff meetings; Telmar's failure to discipline another teacher who yelled at Plaintiff; Telmar calling Plaintiff Jennifer instead of Joanne; and Telmar forcing Plaintiff to use her maiden name Gallagher with her married name; and transferring Plaintiff to Park for the 2011/2012 school year. Though many may have occurred prior to September 6, 2010 and are time-barred, the Court will address the merits of these claims.

A plaintiff suffers an adverse employment action if he or she endures a "materially adverse change" in working conditions that is "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Galabya, 202 F.3d at 640. The Court finds that none of these acts constitute an adverse employment action as required to sustain a claim of discrimination. Even viewed in a light most favorable to Plaintiff, the facts fail to show that she suffered any

_____

claims under §§ 1981 and 1983, citing Patterson).

"materially adverse change," but merely was forced to endure at most a mere inconvenience or even insult. Therefore, Defendants' motion for summary judgment on Plaintiff's discrimination claims based on Telmar's conduct is granted.

This includes Plaintiff's claim that she was discriminated by her transfer to Park for the 2011/2012 school year to continue to teach ICT kindergarten. As noted above, a teacher's transfer is generally not an adverse employment action unless there is a loss of salary, benefits, seniority or tenure. See Galabya, 202 F.3d at 640. Yet, a transfer could be an adverse employment action if it is "materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement." Galabya, 202 F.3d at 641.

The transfer here was to teach the same course, on the same level and only in a different building. The evidence indicates that all of the ICT kindergarten classes were transferred from Dryden, and in no way was Plaintiff treated differently than other ICT kindergarten teachers. Thus, the Court finds this transfer was not a "materially adverse change" to be an adverse employment action, nor does it indicate any inference of discrimination. Therefore Defendants' motion for summary judgment on this claim is denied.[6]

Plaintiff's claims of a hostile work environment under § 1981 fail for the same reasons stated above in connection with Plaintiff's Title VII claim. Therefore, Defendants' motion for summary judgment on this claim is also granted.

---

[6]The Court also notes that Plaintiff did not oppose Defendants' motion that there is no basis for individual liability against Defendant Mary Lagnado under § 1981 or § 1983 (see Pl. Mem., at 22-23), and therefore Defendants' motion for summary judgment on the claims against her is granted.

II. Plaintiff's Claims under NYSHRL and Municipal Liability

Liability under the NYSHRL is established under the same standards as those under Title VII. Matusick v. Erie County Water Authority, 757 F.3d 31, 47 (2d Cir. 2014) (citing Ferrante v. Am. Lung Ass'n, 90 N.Y.2d 623, 629, 687 N.E.2d 1308, 1312, 665 N.Y.S.2d 25, 28 (1997)); Albert-Roberts v. GGG Const., LLC, 542 Fed.Appx. 62, 63, n.2 (2d Cir. 2013) (citing Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)); Patterson, 375 F.3d at 225. The NYSHRL creates individual aidor and abettor liability where there is an underlying discrimination violation. Thus, the Court's rulings on Plaintiff's claims under Title VII and § 1981 as described above apply to Plaintiff's NYSHRL claims.

Plaintiff's claims for municipal liability require a showing that a constitutional violation occurred pursuant to an official custom or policy, or by a policy maker. Tekula v. Bayport-Blue Point School Dist., 295 F.Supp.2d 224, 233 (E.D.N.Y. 2003) (other citations omitted). Plaintiff argues a school principal may be such a policy maker. See Pl. Mem., at 24. Since claims remain to be tried in this case that are relevant to Plaintiff's claims for municipal liability, the Court denies Defendants' motion against this claim at this time, without prejudice to renew at the time of trial.

CONCLUSION

For the reasons stated above, the Court hereby grants Defendants' motion for summary judgment in part, and denies it in part, as follows:

Defendants' motion is granted on Plaintiff's claims under Title VII for any acts pre-dating March 1, 2012;

Defendants' motion is granted on claims based on Defendant Dingwall's silencing of

Plaintiff at staff meetings;

Defendants' motion is granted on Plaintiff's claims for hostile work environment; and,

Defendants' motion is granted on Plaintiff's § 1981 and § 1983 claims based on certain acts by Defendant Telmar's conduct as described above.

The Court finds issues of fact exist concerning whether Plaintiff suffered an adverse employment action in connection with her transfer for the 2012/2013 school year and the support she received that year, and therefore the Court denies summary judgment on those discrimination claims. The Court also denies Defendants' motion as to Plaintiff's municipal liability claims, without prejudice to be renewed at the time of trial. Counsel are reminded that jury selection for the trial of the remaining claims is scheduled for September 28, 2015.

SO ORDERED.

s/ Leonard D. Wexler

_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
July 15, 2015